NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LAUREEN BULL,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.

Defendants.

**Hon. Dennis M. Cavanaugh**

**OPINION**

Civil Action 07-cv-02291

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by United Parcel Service, Inc. ("Defendant") for dismissal and sanctions. For the reasons stated herein, Defendant's motion to dismiss is **granted**.

## I. BACKGROUND

Plaintiff Laureen Bull had been a part-time manual laborer employed by Defendant UPS since June 2, 1986. In December, 2005 Ms. Bull and a co-worker attempted to lift a heavy package which fell, allegedly injuring Ms. Bull's neck and shoulder. Ms. Bull subsequently saw several doctors over a period of weeks, and was placed on a "light-duty" assignment for approximately one month, and then on worker's compensation leave from February 21, 2006 until March 29, 2006, when her orthopedic doctor told her, and wrote a note to the effect, that Ms. Bull had achieved " maximum medical improvement" and could return to work, with a restriction that she not be allowed to lift packages overhead that weighed more than 10 pounds. On April 4, 2006, Ms. Bull was sent

home after an apparent dispute with her supervisor over the nature of her medical clearance. The parties are in dispute as to whether Ms. Bull's employment was terminated on that evening. Subsequently, Ms. Bull contacted her Teamster's union representative and sought his help in facilitating her return to work. She was advised by the union representative, Mr. Robert Cherney, to obtain written medical clearance from a physician that clarified what restrictions, if any, would effect Ms. Bull's ability to perform the essential functions of her job, as described in a written job description, which included the ability to lift up to 70 pounds. Ms. Bull was subsequently examined by Dr. Morton Farber on June 13, 2006, and the next day she picked up a note from his office which she subsequently faxed to UPS. The note, however, failed to clarify whether Ms. Bull was able to lift the required amount. She subsequently faxed a second note that she reportedly received from Dr. Farber's office which she felt would clarify her ability to resume her employment without medical restrictions. It is these two notes that are the subject of the instant motion.

After faxing the two notes to UPS, and after several letters from her union representative, including a final one expressing his frustration and inability to help Ms. Bull with her reinstatement, Ms. Bull undertook this lawsuit on April 3, 2007, and it was removed to Federal District Court on May 15, 2007. Following this Court's ruling on Defendant's motion for summary judgment pursuant to R. Civ. P. 56 on June 6, 2009, the case proceeded to trial, where a mistrial was declared on March 10, 2010 after Ms. Bull testified, in response to a question from the Court, that the originals of the Farber notes were in her home. Previously it was reported to the Court that the originals were either lost or otherwise unobtainable.

## II. LEGAL STANDARD

### A. Spoliation

The classic definition of spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation." MOSAID Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004); Aetna Life and Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. 358, 365 (App. Div. 1998) (citing Hirsch v. General Motors Corp., 266 N.J. Super. 222, 234 (Law Div. 1993)). While Plaintiff's failure concerns her obligation to locate and produce evidence, not its preservation, this Court finds the reasoning in discussions of spoliation and its requisite sanctions to be relevant. Moreover, spoliation need not require the literal destruction of evidence, but may also occur where evidence is not produced. When documents cannot be found or are destroyed and the contents of the documents are relevant to the case, "the trier of fact generally may receive the fact of the document's *non-production or* destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir.1995)(emphasis added).

Generally, to determine spoliation of evidence, four factors must be found: "(1) the evidence in question must be within the party's control; (2) it must appear that there has been actual *suppression or withholding* of the evidence (emphasis added) ; (3) the evidence destroyed or *withheld* was relevant to claims or defenses; and (4) it was reasonably foreseeable that the evidence would later be discoverable." *Paluch v. Dawson,* 2009 WL 3287395, at *2 (M.D.Pa.2009); *Brewer,* 72 F.3d at 334. While there is no duty to keep or retain every document in the party's possession,

"even in advance of litigation, it [a party] is under a duty to preserve what it knows or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Ogin v. Ahmed,* 563 F.Supp.2d 539, 543 (M.D.Pa.2008).

B. Sanctions for Spoliation of Evidence

The key considerations in determining whether spoliation sanctions are warranted include:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.
> *Maaco Franchising, Inc. v. Augustin,* 2010 WL 3239259, 2 (E.D.Pa.) (E.D.Pa.,2010)

C. Sanction of Dismissal

A district court has the inherent power to sanction parties. *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78 (3d Cir.1994). The Third Circuit in *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 864, 868 (3d Cir.1984), lists six factors that a district court must consider before imposing dismissal as a sanction:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

In balancing the *Poulis* factors, there is not a "magic formula" or "mechanical calculation" to apply them. *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir.2008). The choice of a sanction to impose in a particular case is a matter within the sound discretion of the court. *See Gates Rubber Co. v. Bando Chem. Indus. Ltd.,* 167 F.R.D. 90, 106 (D.Colo.1996).

## III. DISCUSSION

### A. Spoliation Factors

As to the first and second factors, the possession and control of the spoliated evidence and its actual suppression or withholding, in the instant case Plaintiff has failed to produce notes that she apparently had in her possession throughout the pendency of this litigation. Although Plaintiff would have this Court believe that originals of the documents in question were never requested during discovery, that contention is disingenuous in light of the record, which documents that at least as early as September 27, 2006, Defendant UPS had requested "that Ms. Bull produce the original notes from Dr. Farber's office due to the fact that the notes received to date are blurry and in some cases illegible." (See letter from Sal Messina to Robert Cherney, Def. Ex. For Trial #13, D00409). The fact that UPS made this demand prior to the official commencement of discovery in this action does not render it any less of a demand for the original documents. It was a demand made by a party, and the fact that it was not made by Defendant's attorney is a technicality that is unavailing, especially in light of Defendant's attorneys statement to this Court that "we've been asking informally for these for a lot longer time period,"(Transcript of Trial Proceedings, March 10, 2010, page 12), and Plaintiff's attorneys statement to the Court that "I've been asking her (Ms. Bull) for the originals since the beginning when Mr. Bissinger (Defendant's attorney) has been asking me for the originals." (Transcript of Trial Proceedings, p.28) Although Plaintiff's contention that Defendant's trial subpoena was improperly served on Plaintiff's attorney rather than on Plaintiff herself is technically correct under Fed. R. Civ. P. 45, it is similarly unpersuasive as an explanation for why Plaintiff was never forthcoming, and why Plaintiff's lawyer did not realize that a diligent search for the originals had not even been undertaken. Common sense and reasonableness in light of this record, and the

numerous and repeated references to the fact that Plaintiff never accounted for the absence of the originals, point to nothing less than purposeful withholding of critical evidence that can not be countenanced or overlooked by this Court.

As to the third and fourth factors, the relevance of the evidence and the foreseeability of its usefulness in the litigation, it is hard to imagine evidence that could have been more relevant or foreseeable. Since the first motion was filed with this Court, the centrality of the Farber medical notes has been apparent. There can be no serious question on Plaintiff's part that these documents would be, and had continually been, sought by Defendant as crucial, central and indispensable to the litigation.

B. Sanction of Dismissal; Analysis of the *Poulis* Factors and Spoliation Factors

In this case, the factors that this Court must consider heavily weigh against allowing the Plaintiff to proceed.

The first factor under both *Poulis* and *Maaco*, personal responsibility or the degree of fault of the party, weigh heavily against Plaintiff. There is no plausible explanation other than Plaintiff's misconduct that explains the withholding of the original Farber notes. Despite numerous requests, both formal and informal, to produce the disputed documents, Plaintiff never responded. Only inadvertently, at trial and in the presence of the jury, was the fact that she was in possession of the documents even made known to the Court and the Defendant.

The second factor in the *Poulis* analysis, which is identical to the second prong of the test in *Maaco*, prejudice to the adversary, is hard to measure in this case, because the originals have never been produced, although five days after this Court declared a mistrial, they were apparently found

by Plaintiff. Nonetheless, it is reasonable to infer actual prejudice, based on several factors. Prejudice need not be quantifiable, but "under the second *Poulis* factor, the Court examines the prejudice to other parties caused by the delay, including considering whether the party's conduct has resulted in 'extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party.'" *Chiarulli v. Taylor,* No. 08-4400, 2010 U.S. Dist. LEXIS 32618, at *8 (D.N.J. Mar. 31, 2010) (quoting *Huertas v. City of Philadelphia,* No. 02-7955, 2005 U.S. Dist. LEXIS 1282 (E.D. Pa. Jan. 26, 2005), aff'd, 139 Fed. Appx.444 (3d Cir. July 14, 2005), cert. denied, 546 U.S. 1076 (2005). "A party may also be prejudiced if its 'ability to prepare effectively a full and complete trial strategy' is impeded." *Id.* "A finding of prejudice to the opposing party under *Poulis* 'weighs heavily in favor of dismissal.'" *Id.* (quoting *Huertas*, 2005 U.S. Dist. LEXIS 1282 at *3). Given the inference that the Defendant has made since the beginning of this litigation, that the second note from Dr. Farber was a sham or perhaps even a forgery, the fact that Defendant was inhibited from testing and examining the original suggests significant prejudice. Had Defendant been able to prove that the document was tampered with, that would obviously have had significant bearing on the case. The fact that they could not conduct a forensic analysis on the original was certainly prejudicial, even if the outcome of such an analysis remains unknown. The fact that Defendant incurred the cost and burden of preparing for a trial that ended abruptly through no fault of Defendants is also to be weighed, along with the prejudice of having revealed its trial strategy in opening statements to the jury, and cross-examination of witnesses. All of these favor an appropriate sanction.

The third *Poulis* factor, a history of dilatoriness, weighs extremely against Plaintiff. The first request for the originals that the Court can find documented is the September 27, 2006 letter from

Mr. Messina previously cited. Both before and during the litigation Plaintiff had notice of the importance of the medical notes, and the fact that their authenticity, accuracy and reliability would be questioned at trial. Until after the conclusion of the litigation the originals were neither produced nor, it seems, searched for. It is hard to imagine conduct more dilatory.

The fourth *Poulis* factor asks the Court to weigh the bad faith or willfullness of Plaintiff's withholding and, once again, it is hard to look favorably on conduct that continued for so many years and in the face of so many requests for the documents. In every filing received by this Court, the issue of the lack of originals of the Farber medical notes has been pointed out. No explanation for their disappearance has ever been offered, and now, at this late date in the proceedings, and after a mistrial, Plaintiff has the temerity to suggest that if only Defendant had asked "formally" or "properly" the outcome would have been different (see Plaintiff's Brief in Opposition to Motion for Dismissal and Sanctions, page 1; ECF Doc 58, page 4042). That contention in and of itself strikes the Court as evidence of bad faith.

"No charge to the jury about adverse inferences to be drawn from spoliated evidence could level the field or cure the problem." Manorcare Health Services, Inc. v. Osmose Wood Preserving, Inc., 336 N.J. Super. 218 (App. Div. 2001). Even if the Court were to impose a lesser sanction such as charging the jury with an adverse inference instruction or merely precluding the admission of evidence concerning the originals, or adhering to the previous rulings on the Motions *in limine*, the damage caused by Plaintiff's conduct would not be ameliorated. A sanction other than dismissal would be insufficient to remedy the prejudice caused by Plaintiff's intentional withholding of evidence and failure to provide appropriate notice to Defendant. . There is no way around the fact that Plaintiff's conduct has irreparably prejudiced Defendant. With this in mind, the availability of

lesser sanctions is something the Court has considered long and seriously. This Court does not lightly interfere with the adjudicative process, and the promise that a litigant is entitled to her day in Court. Nonetheless, the Court can not condone flagrant violations of the most basic code of judicial propriety and honest dealing. The fact that but for one inadvertent question asked by the Court, the entire trial might have been conducted without ever knowing that the originals existed has given this Court great pause and cause for concern. Only by sheer luck, and not by good faith, was a manifest injustice prevented. To give Plaintiff a second chance on the theory of "no harm, no foul"minimizes the seriousness of what could have occurred, as well as the prejudice to Defendant that did occur by allowing Plaintiff to observe Defendant's trial strategy, and hone its own strategy in response during the three days of testimony prior to the mistrial. There is no way to mitigate that prejudice without dismissal. A lesser sanction will not suffice in light of Plaintiff's misconduct.

The last question, the meritoriousness of the claim or defense, is, as this Court has previously described, utterly lacking. Plaintiff's defense that Defendant did not properly request the originals during discovery is disingenuous, at very least, and at odds with the record. Moreover, claiming, as Plaintiff did on the record, that "I have looked for the original note. Many things going on in my life with the paperwork, and the sale–got damage in my apartment" (Transcript of Trial, p. 30) is unavailing, especially considering that it is Plaintiff who brought suit against Defendant. She therefore had a responsibility to be thorough and responsive in her production of evidence, and was neither.

Based on the Court's analysis of these factors as they pertain to the case at bar, and considering them in the specific context of spoliation, the Court concludes that dismissal of the complaint with prejudice is appropriate.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss is **granted.** An appropriate order follows this opinion.

S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.

Date: October 29, 2010
cc: Hon. Joseph A. Dickson, U.S.M.J.
Counsel of Record